UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRANDON C. SCHNEIDER,

*Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

*Defendants.*

No. 18-cv-2294 (DLF)

**MEMORANDUM OPINION**

Brandon Schneider brings this action against the Department of Justice (DOJ), the Department of State, and the Central Intelligence Agency (CIA) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, and the Privacy Act, 5 U.S.C. § 552a, *et seq.*, to challenge the CIA's response to requests Schneider made under both Acts. Compl. ¶ 1, Dkt. 1. Before the Court is the government's Second Renewed Motion for Summary Judgment. Dkt. 35. For the reasons that follow, the Court will grant the motion.

I.   **BACKGROUND**

In May 2018, Schneider submitted a FOIA and Privacy Act request to the DOJ, Department of State, and CIA. *See* Defs.' Stmt. of Material Facts ¶ 1, Dkt. 22-2. In particular, Schneider requested documents relating to his 2003 CIA employment application. *Id.* The CIA in turn searched its directorates for Schneider's documents. *Id.* ¶ 6. In March 2019, the CIA informed Schneider that it had located seventeen documents and released one document in full and four documents in part. Shiner Decl. ¶¶ 9, 13, Dkt. 22-5. The CIA withheld the remaining documents under FOIA and Privacy Act exemptions. *Id.* ¶ 9.

In October 2018, Schneider brought this action. Compl. ¶ 1. Schneider has since narrowed his challenge to a single criminal referral document sent by the CIA to the DOJ. *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 1, Dkt. 24. Thus, this case comes down to a single document. The CIA withheld the document in full under FOIA Exemptions 5 and 7(E). *See* Blaine Decl. ¶¶ 6–7, Dkt. 35-3. Alternatively, the CIA redacted all portions of the document under Privacy Act Exemptions (j)(1) and (k)(2). *See* Shiner Decl. ¶¶ 15–16, 19–20. The government has twice moved for summary judgment. *See* Defs.' Mot. for Summ. J., Dkt. 22; Defs.' Renewed Mot. for Summ. J., Dkt. 27. In both instances, the Court found that it did not have sufficient information or argumentation to rule on the government's motions. *See* Order Denying Defs.' Mot. for Summ. J., Dkt. 26; Order Denying Defs.' Renewed Mot. for Summ. J., Dkt. 32. In July 2020, the government filed its second renewed motion for summary judgment, Defs.' Second Renewed Mot. for Summ. J., which is now before the Court. The Court has benefitted from the government's more fulsome argument in the latest round of briefing, which gave support to the declaration.

## II.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a summary judgment motion, all facts and inferences must be viewed in the light most favorable to the record requester, and the agency bears the burden to show its statutory compliance. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To succeed on a motion for summary judgment, the agency must prove "that it has conducted a search reasonably calculated to uncover all relevant documents," *Weisberg v. DOJ*,

705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks omitted).  The agency also "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from [statutory] inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam).  To properly invoke statutory exemptions, the agency must explain in reasonable detail why an exemption applies to any withheld record. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  "In a suit seeking agency documents—whether under the Privacy Act or FOIA—at the summary judgment stage . . . the court may rely on a reasonably detailed affidavit" to determine whether an agency has met the statutory obligations.  *Chambers*, 568 F.3d at 1003.  An agency's affidavit is accorded a presumption of good faith, *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  If the affidavit describes with a "reasonable specificity of detail" the justifications for withholding the information under the invoked statutory exemption, *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), then "summary judgment is warranted on the basis of the affidavit alone." *ACLU v. DOJ*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see Media Rsch. Ctr. v. DOJ*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) ("[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  Particularly when considering claimed exceptions within the context of national security, federal courts "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed records." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotation marks omitted).

### III. ANALYSIS

Generally speaking, FOIA and the Privacy Act provide requestors with access to federal agency records so long as certain exemptions do not apply. *See* 5 U.S.C. § 552(a) (FOIA); 5 U.S.C. § 552a(d)(1), (3) (Privacy Act). Where an agency fails to comply with a proper request, both statutes create a private cause of action for the requestor. *See* 5 U.S.C. § 552(a)(4)(B) (FOIA); 5 U.S.C. § 552a(g)(1) (Privacy Act). As an initial matter, an agency must demonstrate that it conducted an adequate search for the requested records. *See Chambers*, 568 F.3d at 1003 ("[T]he Privacy Act, like FOIA, requires [a search that is] reasonably calculated to uncover all relevant documents.").

If the agency's search reveals relevant documents, the agency may invoke statutory exemptions under both Acts to withhold information from disclosure. *See* 5 U.S.C. § 552(b) (FOIA); 5 U.S.C. § 552a(j)–(k) (Privacy Act). Yet "[w]hile the Privacy Act was designed to provide *individuals* with more control over the gathering, dissemination, and accuracy of agency information about themselves, FOIA was intended to increase the *public's* access to governmental information." *Greentree v. U.S. Customs Serv.*, 674 F.2d 74, 76 (D.C. Cir. 1982) (emphasis added). The two Acts "are not completely coextensive; each provides or limits access to material not opened or closed by the other." *Id.* at 78. Where an agency invokes exemptions to withhold information under both Acts, it must "demonstrate that the documents fall within some exemption under *each* Act." *Martin v. Off. of Special Couns., Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (emphasis in original) ("If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA.").

Here, Schneider does not challenge the adequacy of the CIA's search. Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 1 ("Mr. Schneider concedes the adequacy of the searches conducted for responsive records, as well as the remainder of the redactions and/or withholdings made by the [government]."). And based on the sworn declarations, *see* Blaine Decl.; Shiner Decl.; Second Shiner Decl., Dkt. 27-1, the Court finds that the CIA conducted an adequate search reasonably calculated to uncover all relevant documents. *See Weisberg*, 705 F.2d at 1351. The government's motion for summary judgment then depends on the applicability of the FOIA and Privacy Act exemptions invoked for the criminal referral document at issue.

### A. FOIA Exemptions Invoked

Under FOIA, an agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *King v. DOJ*, 830 F.2d 210, 219 (D.C. Cir. 1987). The burden rests with the agency to "prov[e] the applicability of claimed exceptions[,] [t]ypically . . . by affidavit." *ACLU*, 628 F.3d at 619. Here, the CIA's affidavits satisfy that burden.

#### 1. Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant," such as attorney work-product, attorney-client, and deliberative process privileges. *Loving v. Dept. of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted).

The deliberative process privilege incorporated in Exemption 5 in turn protects from disclosure communications among agencies to "prevent injury to the quality of agency decisions." *Horowitz v. Peace Corps*, 428 F.3d 271, 276 (D.C. Cir. 2005) (quoting *NLRB. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)); *see Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987) (the key question with Exemption 5 is "whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions"). FOIA's deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citation and internal quotation marks omitted).

To invoke the deliberative process privilege, an agency must demonstrate the withheld information is "predecisional" and "deliberative." *Judicial Watch*, 449 F.3d at 151. Information is predecisional if it precedes an agency decision. *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007). Information is "deliberative" if "it reflects the give-and-take of the consultative process." *Judicial Watch*, 449 F.3d at 151. Documents withheld under the deliberative process privilege typically "reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter." *Petrol. Info.*, 976 F.2d at 1435; *see also Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774–75 (D.C. Cir. 1988) (en banc) (information agency provided to other agencies as part of a consultative process not subject to disclosure under Exemption 5).

The government properly invoked Exemption 5's deliberative process privilege to withhold the criminal referral document. While investigating Schneider's background for his

6

employment application, the CIA "determined that they had obtained information that potentially showed a violation of Federal criminal laws." Second Shiner Decl. ¶ 3. The document is the resulting communication from the CIA to the DOJ that "provided [the violation's] written summary," *id.*, and "contain[ed] select facts that the CIA considered relevant for DOJ's consideration." Blaine Decl. ¶ 6. As such, "[the document] is a technique by which the Intelligence Community conveys information related to potential criminal violations to DOJ." Second Shiner Decl. ¶ 4. While the document contains factual information, it was "distilled from certain admissions made during the Agency's security processing and shows particular information that CIA officials considered significant." Blaine Decl. ¶ 6.

The government has demonstrated both Exemption 5 requirements. First, the CIA's sworn declarations show that the criminal referral document was predecisional because it did not constitute a final decision by the CIA, but instead "initiated and served as a preliminary step in DOJ's larger analysis as to whether or not a criminal investigation and/or prosecution was warranted." Second Shiner Decl. ¶ 3. Second, the declarations show that the document was deliberative because it "represents an interim step in a much broader interagency process," *id.*, and it "indicates a preliminary determination by the CIA that a certain incident or activity merits further consideration by the DOJ." Blaine Decl. ¶ 6. But the DOJ "ultimately decides whether or not to open a criminal investigation based on information provided in the [document]." Shiner Decl. ¶ 32. In invoking Exemption 5, the government has demonstrated that revealing the contents of the document would "inhibit the frank communications and the free exchange of ideas between federal agencies." *Id.* Because the document was both "predecisional" and "deliberative," the CIA properly invoked FOIA Exemption 5 in withholding it. *See Judicial Watch*, 449 F.3d at 151.

2. Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This Circuit has recognized that "[b]ackground investigations conducted to assess an applicant's qualification . . . inherently relate to law enforcement." *Morley*, 508 F.3d at 1129; *see Mittleman v. Off. of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996) (per curiam) (holding that personnel background investigations have a law enforcement purpose because they are "consistent with the interests of . . . national security" and "enforcement of the law fairly includes not merely the detection and punishment of violations of law but their prevention" (internal quotation marks and citations omitted)); *see also Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016) (permitting the government to withhold documents describing an agency's polygraph procedures and techniques where the agency used polygraphs to "screen applicants for security clearances so that they may be deemed suitable for work").

In interpreting whether a record's contents present a threat of circumvention if released, federal courts "refrain from adopting an overly formalistic approach," *Morley*, 508 F.3d at 1129, and recognize that the exemption "sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). Properly invoked, Exemption 7(E) "requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (alterations adopted and internal quotation marks omitted). The Exemption "looks not just for circumvention of the law, but for a risk of circumvention; not

just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* at 1193.

The government properly invoked Exemption 7(E) to protect law enforcement techniques and procedures—specifically, polygraph programs and techniques that the CIA uses to "assess the suitability of applicants and current employees who may be entrusted with classified information," Blaine Decl. ¶ 7; *see also* Shiner Decl. ¶ 38; Second Shiner Decl. ¶ 4. In Schneider's case, the CIA compiled the criminal referral document "for law enforcement purposes" and "as part of [Schneider's] national security background investigation." *Id.* These programs and techniques "are designed with an eye toward ensuring the protection of sensitive national security information and the workforce as a whole." Blaine Decl. ¶ 7. As such, the criminal referral document contains information about "the methods and techniques used by the [CIA] in screening applicants," Second Shiner Decl. ¶ 4, and revealing its contents "would tend to show what types of disclosures to the Agency are deemed problematic and what triggers the Agency's crimes reporting obligations." Blaine Decl. ¶ 7. Disclosing the document also may enable "future applicants and those with intent to harm the government [to] tailor their responses during polygraph sessions and screening interviews to circumvent security procedures." *Id.* "These individuals could then make unauthorized disclosures of such information and cause serious harm to national security." Shiner Decl. ¶ 38. Because the government has sufficiently detailed both the information's law enforcement purpose and the risk that disclosure would circumvent the law, the CIA properly invoked FOIA Exemption 7(E) to withhold the criminal referral document.

For these same reasons, the Court denies Schneider's request for *in camera* review. *See* Pl.'s Opp'n to Second Renewed Mot. for Summ. J. at 9, Dkt. 36. "When the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate." *ACLU*, 628 F.3d at 626 (internal quotation marks omitted). The government has met its burden of establishing the exemptions' applicability with its sworn declarations.

### B. Privacy Act Exemptions (j)(1), (k)(2)

The Privacy Act provides citizens the right of access to a "system of records" maintained by an agency. 5 U.S.C. § 552a(d)(1). As with FOIA, the Privacy Act permits agencies to limit individuals' right of access to systems of records. *See* 5 U.S.C. § 552a(j)–(k). The Privacy Act specifically grants an agency head the authority to promulgate rules exempting systems of records. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1119 (D.C. Cir. 2007).

Here, the government invokes Exemptions (j)(1) and (k)(2).[1] Exemption (j)(1) authorizes the head of an agency to promulgate rules "to exempt any system of records within the agency" from disclosure "if the system of records is maintained by the Central Intelligence Agency." 5 U.S.C. § 552a(j)(1). Similarly, Exemption (k)(2) authorizes the head of an agency to promulgate rules "to exempt any system of records within the agency" from disclosing "investigatory material compiled for law enforcement purposes" by an agency whose primary function is not criminal law enforcement. 5 U.S.C. § 552a(k)(2). As the government maintains, the Director of

---

[1] Schneider argues that the government has not invoked Privacy Act (j)(1) and (k)(2) exemptions in its second renewed motion for summary judgment. *See* Pl.'s Opp'n to Second Renewed Mot. for Summ. J. at 4–5, 5 n.4 ("[The government] has not addressed the scope of the continued application of the Privacy Act exemptions in the [Shiner or Blaine Declarations]."). But the applicability of these exemptions is properly before the Court because the government references both exemptions in the sworn declarations it submitted with its motion, *see* Defs.' Statement. of Material Facts ¶¶ 12–14, 17–18; *see also* Fed. R. Civ. P. 56(c)(3); *Durant v. District of Columbia Gov't*, 875 F.3d 685, 699 (D.C. Cir. 2017) ("[A] District Court may consider other materials in the record." (citation and internal quotation marks omitted)).

the CIA has promulgated regulations exempting the agency's systems of records under both Privacy Act provisions. *See* 32 C.F.R. § 1901.62(d)(1) (exempting access to systems of records "that consist of, pertain to, or would otherwise reveal intelligence sources and methods" under (j)(1)); 32 C.F.R. § 1901.63(b) (exempting access to systems of records "that consist of, pertain to, or would otherwise reveal information that is . . . investigatory in nature and compiled for law enforcement purposes" under (k)(2)).

The document contains both intelligence sources and investigatory information. As the declarations attest, the CIA's search involved files held by the Agency's Directorate of Support, an office that "oversees offices that are responsible for personnel-related matters and employee and applicant screening and fitness for duty, including . . . polygraph testing." Shiner Decl. ¶ 11. The criminal referral document Schneider seeks access to includes information about the polygraph program, an intelligence source and method that the Director of the CIA has, by regulation, exempted from access under (j)(1). *Id.* ¶¶ 15–16 ("The DCIA has implemented this statutory provision by exempting from the access provisions . . . polygraph records and any portions of all systems of records maintained by the CIA."); *see also* 32 C.F.R. § 1901.62(d)(1). The document further includes information "used to assess the suitability of . . . applicants and current employees," investigatory information that the Director of the CIA has, by regulation, exempted from access under (k)(2). Shiner Decl. ¶ 20; *see also* 32 C.F.R. § 1901.63(b). Thus, the government's invocation of the Privacy Act Exemptions (j)(1) and (k)(2) is appropriate.

C.     **Segregability**

Lastly, the CIA has satisfied its segregability obligations. Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). While Schneider does not

contest the sufficiency of the segregability determination, the Court has an affirmative duty to consider whether the agency has complied with FOIA's segregability requirement. *See Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

An agency can satisfy its segregability obligations by "provid[ing] a detailed description of the information withheld through the submission of a so-called Vaughn Index, sufficiently detailed affidavits or declarations, or both." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009) (internal quotation marks omitted); *see also Maydak v. DOJ*, 218 F.3d 760, 767 (D.C. Cir. 2000) ("[T]he government does not necessarily have to produce a Vaughn index to justify denying a FOIA request."); *Brinton v. Dep't of State*, 636 F.2d 600, 606 (D.C. Cir. 1980) (upholding the government's withholding of documents under FOIA Exemption 5 based on affidavits alone). An agency is entitled to a presumption of compliance with the obligation to disclose reasonably segregable material, *Boyd v. Crim. Div. of DOJ*, 475 F.3d 381, 391 (D.C. Cir. 2007), so long as its supporting materials "give the reviewing court a reasonable basis to evaluate [the withholding]." *Judicial Watch*, 449 F.3d at 146 (internal quotation marks omitted).

Here, the CIA submitted three sworn declarations, each of which represented that the CIA staff reviewed the criminal referral document and "conducted a page-by-page, line-by-line review and released all non-exempt, reasonably segregable information." Blaine Decl. ¶ 8; *see also* Shiner Decl. ¶ 44; Second Shiner Decl. ¶ 5. Given the limited nature of the requested document and that each of the declarations attest to a thorough examination of the document, the CIA has satisfied its segregability obligation. *See Judicial Watch*, 449 F.3d at 146.

**CONCLUSION**

For the foregoing reasons, the government's motion for summary judgment is granted. A separate order consistent with this decision accompanies this memorandum opinion.

October 28, 2020

_____
DABNEY L. FRIEDRICH
United States District Judge